```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:
                                            CASE NO. 04-25436
CHAD J. HUTCHINSON,

                        Debtor.            DECISION & ORDER
_____

KENNETH W. GORDON, TRUSTEE,

                        Plaintiff,

             V.                             AP #05-2027

CHAD J. HUTCHINSON,

                        Defendant.
_____
```

### BACKGROUND

On December 21, 2004, Chad J. Hutchinson (the "Debtor") filed a petition initiating a Chapter 7 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that: (1) he owned a 2003 Dodge Dakota automobile and a 2001 Honda Motorcycle, both of which had secured loans against them with balances significantly higher than their current values; (2) he had only the following unsecured non-priority creditors: (a) Gayle Hutchinson, his former spouse, for an "unliquidated" amount; (b) a Household Finance Corporation personal loan with a balance of $9,132.24; and (c) a Providian Visa account (the "Providian Account") with a current balance of $9,233.05; (3) he had surgery in November 2004 for a ruptured disc and pinched

nerve incurred in October 2004, and was now on disability; (4) in response to Question #17 on Schedule B, which asks debtors to list, "Other liquidated debts owing debtor including tax refunds. Give particulars," the Debtor listed his interest in anticipated 2004 joint tax refunds with Gayle Hutchinson, but he did not list any other liquidated debts owed to him; and (5) he had no other contingent and unliquidated claims against anyone (Schedule B, Question #20).

Kenneth W. Gordon, Esq. was appointed as the Debtor's Chapter 7 Trustee (the "Trustee"), and on January 13, 2005, he conducted a Section 341 Meeting of Creditors (the "Meeting of Creditors") at which the Debtor and his attorney appeared.

On March 7, 2005, the Trustee filed an Adversary Proceeding objecting to the Debtor's discharge under Section 727. The Complaint in the Adversary Proceeding alleged that the Debtor failed to disclose, on his Schedules and in his initial testimony at the Meeting of Creditors, that he was owed money by Bernie Napolitano ("Napolitano") in the approximate amount of $3,000.00 (the "Napolitano Debt"), which was the balance due under a $7,000.00 Promissory Note (the "Napolitano Note").

On March 25, 2005, the Debtor interposed an Answer to the Complaint which denied that the Trustee had sufficient grounds under Section 727 for the Court to deny the Debtor's discharge.

**Page 2**

On July 20, 2005, the Court conducted a trial (the "Trial") at which the Debtor was the only witness to testify.

Admitted into evidence as Plaintiff's Exhibit #1 at Trial, and played into the record, was an audiotape made by the Trustee of the Meeting of Creditors (the "Audio tape"). The Audio tape confirmed that the Debtor initially testified that: (1) he had assisted his attorney in preparing all of his Schedules and had read each page; (2) he had listed all of his assets; (3) he had no right to sue or make a claim against anyone; and (4) no one owed him any money.

The Audio tape also confirmed that the Trustee learned about the Napolitano Debt from Gayle Hutchinson who appeared at the Meeting of Creditors and orally provided him with the details of the Debt.

The Audio tape further confirmed that after Gayle Hutchinson advised the Trustee of the existence of the Napolitano Debt, the Debtor testified that: (1) the Debt existed; (2) there was approximately $3,000.00 still due from Napolitano; and (3) he had some paperwork at home regarding the Debt.

At Trial, the Debtor testified that: (1) he initially met Napolitano, a jeweler, in 1993 when he was shopping for wedding rings and they had been friends ever since; (2) in August 2003, when he and Napolitano were on a motorcycle ride to Geneseo, Napolitano indicated that he needed $7,000.00 to expand his jewelry

**Page 3**

store and business; (3) he agreed to loan Napolitano $7,000.00 by taking a cash advance against his Providian Account; (4) when he learned that he could only take cash advances of $500.00 per day and Napolitano needed the money immediately, he arranged for Gayle Hutchinson's employer to write a $7,000.00 check to Napolitano, and then he took daily cash advances of $500.00 and used them to repay her; (5) Napolitano would give the Debtor a check for approximately $250.00 per month, which he would then deposit into his bank account and write his monthly payment check to Providian that was due on the 15th or the 16th of each month; (6) at times the Debtor had to call Napolitano for his payment because it was getting too close to the due date for the Providian Account payment; (7) Napolitano paid him approximately $250.00 per month until October, November or December 2004;[1] (8) Napolitano knew that the Debtor had filed for bankruptcy; (9) he never intended to collect the balance of the Napolitano Debt after he filed for bankruptcy; (10) Gayle Hutchinson, who worked in a law office, made sure that the transaction was documented by dictating the wording of the Note and Napolitano and the Debtor executed the Napolitano Note on August 7,

---

[1] The Debtor's testimony was inconsistent on this. At one time, he testified that it was until October, but at another he testified that it was until November or December.

2003;[2] and (11) he did not schedule the Napolitano Debt because: (a) he never thought of it as an asset; and (b) he merely used the Napolitano payments to repay the amounts due on the Providian Account that he had borrowed from to loan Napolitano the money.

In a closing argument, the Debtor's attorney asserted that the critical issue before the Court was the Debtor's intent under Section 727(a)(4)(A).[3] The attorney further asserted that: (1) the Trustee had not met his burden to prove that the Debtor knowingly and fraudulently failed to disclose the Napolitano Debt; (2) the Debtor never knowingly and fraudulently failed to disclose the Napolitano Debt on his Schedules or in his initial testimony at the Meeting of Creditors; (3) the Debtor failed to disclose the Napolitano Debt because he did not think that it was an asset; and (4) the Debtor never used the payments he received from Napolitano

---

[2] The Napolitano Note, Plaintiff's Exhibit #2 at Trial, signed by the Debtor and Napolitano on August 7, 2003, reads as follows:

> I Bernard Napolitano borrowed $7,000.00 from Chad Hutchinson to be paid back every month in the amount of not less than $250.00 per month until loan is paid for. In the event of my death the loan is to be paid back out of my estate.

[3] Section 727(a)(4)(A) provides that:

(a) The court shall grant the debtor a discharge, unless—
    (4) the debtor knowingly and fraudulently, in or in connection with the case—
        (A) made a false oath or account[.]

11 U.S.C. § 727 (2005).

Page 5

for his own purposes, he only used them to make payments on the Providian Account that he had borrowed from to loan Napolitano $7,000.00 in August 2003.

## DISCUSSION

### I. CASE LAW

From the cases which have been decided under Section 727(a)(4)(A), including this Court's Decisions & Orders in *In re Pierri,* Ch. 7 Case No. 97-20461, A.P. Case No. 97-2125 (W.D.N.Y. April 21, 1998), *In re Ptasinski* (Chapter 7 Case No. 02-20524, A.P. Case No. 02-2172, W.D.N.Y., February 13, 2003), *In re Foxton* (Chapter 7 Case No. 04-22377, A.P. Case No. 04-2154, W.D.N.Y. April 12, 2005), and *In re Mondore* (Chapter 7 Case No. 04-21316, A.P. Case Nos. 04-2124 and 04-2130, W.D.N.Y. June 14, 2005), we know that for the Court to deny a debtor's discharge because of a false oath or account: (1) the false oath or account must have been knowingly and fraudulently made, *see Farouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244 (4th Cir. 1994); (2) the required intent may be found by inference from all of the facts, *see 6 L.King, Collier on Bankruptcy*, ¶727.04[1][a] at 37 (15th ed. rev. 1996); (3) a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and

**Page 6**

accuracy in answering may rise to the level of the fraudulent intent necessary to bar a discharge, *see In re Diorio*, 407 F.2d 1330 (2d Cir. 1969); (4) a false statement resulting from ignorance or carelessness is not one that is knowing and fraudulent, *see Bank of Miami v. Espino (In re Espino),* 806 F.2d 1001 (11th Cir. 1986); (5) the required false oath or account must be material; and (6) the required false oath or account may be a false statement or omission in the debtor's schedules or a false statement by the debtor at an examination at a creditor's meeting, *see In re Ball*, 84 B.R. 410 (Bankr. D.Md. 1988). Conversely, if items were omitted from the debtor's schedules because of an honest mistake or upon the honest advice of counsel, such a false declaration may not be sufficiently knowingly and fraudulently made so as to result in a denial of discharge.

## II.  THE UNSCHEDULED DEBT

### A.  General

It is undisputed that: (1) when the Debtor filed his petition, Schedules and Statements, and when he appeared and gave his initial testimony at the Meeting of Creditors, he knew that he was still owed approximately $3,000.00 on the Napolitano Note; (2) on his Schedules and Statements and in his initial testimony at the Meeting of Creditors, the Debtor failed to disclose the existence

**Page 7**

of the Napolitano Debt; and (3) it was only after the Debtor's former spouse, Gayle Hutchinson, advised the Trustee of the existence of the Napolitano Debt at the Meeting of Creditors that the Debtor admitted to the existence of the Debt and provided the Trustee with its details.

### B. False Oath and Account

From the evidence produced at Trial and the pleadings and proceedings in the Debtor's bankruptcy case and in the Adversary Proceeding, I find that the Debtor knowingly and fraudulently failed to: (1) schedule the Napolitano Debt as a liquidated debt owing him, as required by Schedule B, Question 17; and (2) disclose the Napolitano Debt at his Meeting of Creditors before its existence was disclosed by his former spouse. Furthermore, I find that, at a minimum, the actions of the Debtor indicate such a reckless disregard for the serious nature of: (a) complying with his duties under Section 521 to pay the necessary attention to the detail and accuracy required to properly complete his Schedules and Statements; and (b) responding correctly and completely to the questions of his Trustee, even after his Trustee gave him a detailed warning at his Meeting of Creditors regarding: (i) the need to respond fully and accurately to the Trustee's questions; and (ii) the consequences of a failure to disclose any assets or

respond to the Trustee's questions,[4] that the necessary fraudulent intent has been demonstrated by a preponderance of the evidence.

The following observations and statements have materially contributed to the Court's determination:

1. The Court is unable to accept the Debtor's reason for not scheduling the Napolitano Debt, which was that he did not believe that it was an asset that needed to be disclosed, because Schedule B does not specifically direct debtors to list their "assets." Schedule B simply asks specific questions about various types of personal property. In this case Schedule B, Question 17, asks if there are any liquidated debts owing to the debtor. Even if the Debtor, who, in this Court's view, unconvincingly tried to present a demeanor of being unintelligent and unsophisticated, did not know what a "liquidated debt" was, he knew what a debt was and he knew that the money he was owed by Napolitano was a debt. Furthermore, the Trustee specifically asked him at the Meeting of Creditors if anyone owed him any money, to which he responded, "no;"

2. Other than the claim of Gayle Hutchinson, which the Debtor interestingly checked as being "unliquidated," he only

---

[4] The parties stipulated to the detailed warning given by the Trustee at the Meeting of Creditors.

**Page 9**

      scheduled two unsecured debts. One of them was the amount due on the Providian Account, which was inextricably linked to the Napolitano Debt and Napolitano's consistent monthly payments of approximately $250.00, as required by the Napolitano Note. It is inconceivable that, when filling out, reviewing and signing his Schedules, where the Debtor was required to list the specific amount due on the Providian Account, he could have failed to focused on the Napolitano Debt;

3. The Debtor testified that he did not intend to make Napolitano pay the balance of the Napolitano Debt after filing his bankruptcy case. After all, why should he make his good friend pay once his bankruptcy discharged him from the amount due on the Providian Account? Although there may be many reasons why the Debtor intentionally, knowingly and fraudulently failed to disclose the existence of the Napolitano Debt, the most obvious one is that once he obtained a discharge from the balance due on the Providian Account, he did not need or want his good friend to repay the monies he had borrowed, and disclosing the Napolitano Note and Debt would have required Napolitano to pay the balance he owed to the Trustee;

4. Given the specific language of Schedule B, Question 17, and the specific question of the Trustee at the Meeting of

**Page 10**

      Creditors, concerning whether anyone owed the Debtor money, it is inconceivable that a debtor who was in possession of a promissory note and was receiving regular monthly payments on the note, would not disclose the debt, unless they were intentionally trying to hide its existence from the Trustee; and

5. At the Meeting of Creditors on January 13, 2005, just days before his Providian Account payment would have been due but for the filing of his bankruptcy case, the Debtor knew that he had not received his regular monthly payment from Napolitano. Nevertheless, he answered "no" when the Trustee asked if anyone owed him any money.

      The Trustee has proved by a preponderance of the evidence that the Debtor has made a material false oath or account in completing his bankruptcy Schedules and initially testifying at his Meeting of Creditors. This false oath with regard to the Napolitano Debt was knowingly and fraudulently made, or made with such reckless disregard for both the serious nature of the information being sought and the necessary attention to detail and accuracy required in completing his Schedules and answering questions asked at his Meeting of Creditors, that fraudulent intent is clearly indicated. Furthermore, there is no credible evidence that the false oath or account was made by mistake, carelessness or inadvertence, or upon

**Page 11**

the honest advice of counsel.  Any testimony of the Debtor to that effect I find, after hearing his testimony, observing him at Trial, and considering the other matters discussed in this Decision & Order, not to be credible.

## CONCLUSION

The discharge of the Debtor, Chad J. Hutchinson, is hereby denied pursuant to Section 727(a)(4)(A).

**IT IS SO ORDERED.**

/s/
**HON. JOHN C. NINFO, II**
**CHIEF U.S. BANKRUPTCY JUDGE**

**Dated:  August 2, 2005**